```
                    UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )   Chapter 7
DOUGLAS J. PEARCE,              )
                                )   Bankruptcy No. 06-01367
     Debtor.                    )
------------------------------  )
DOUGLAS J. PEARCE,              )   Adversary No. 07-09153
                                )
     Plaintiff,                 )
                                )
vs.                             )
                                )
E.L.W. CORPORATION              )
d/b/a WEBER CONCRETE,           )
                                )
     Defendant.                 )
```

**ORDER RE: APPLICATION FOR AN ORDER TO SHOW CAUSE**

This matter came before the undersigned for trial on November 13, 2008 on Application for an Order to Show Cause and for Sanctions for Violation of 11 U.S.C. § 362 Automatic Stay and Violations of 11 U.S.C. § 524(a) Permanent Injunction. Debtor Douglas J. Pearce was represented by attorney Francis Henkels. Attorney John Arenz represented Defendant E.L.W. Corporation d/b/a Weber Concrete ("Weber Concrete"). After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (O).

**STATEMENT OF THE CASE**

Debtor asserts Weber Concrete violated the automatic stay and post-discharge injunction by contacting Wisconsin officials to commence criminal charges against him. He argues this was an improper attempt to collect a debt. Weber Concrete asserts it did not violate the prohibitions of the Bankruptcy Code because the commencement of a criminal proceeding is excepted from the stay.

**FINDINGS OF FACT**

Defendant Weber Concrete is a concrete contractor. Debtor is a general contractor who hired Weber Concrete as a subcontractor for two building projects. On June 9, 2006, Weber

Concrete installed concrete at 509 N. Washington, Cuba City, Wisconsin and billed Debtor $1,679. It also installed concrete at 412 W. Benton, Cuba City, Wisconsin and billed Debtor $5,530. When Debtor failed to pay for the concrete work, Weber Concrete contacted the owners of the two properties. It discovered that the owners had paid Debtor in full, including the amounts owed to Weber Concrete. Debtor did not pay Weber Concrete for its work on either project.

On November 1, 2006, Debtor filed his Chapter 7 petition listing the debts owed to Weber Concrete on Schedule F. Notice of Debtor's Chapter 7 filing was sent to Weber Concrete on November 4, 2006. Debtor's discharge was entered on February 15, 2007.

James Herrig has been the office manager for Weber Concrete since 1989. He is responsible for billing and for following up with delinquent customer accounts. Herrig is in charge of the day to day office management of Weber Concrete and reports directly to the owner, Eldon Weber, every three months.

After learning that Debtor had filed for bankruptcy protection, Herrig contacted a friend and supplier in Wisconsin, Tim Kieler. Kieler informed Herrig that Debtor's actions constitute a crime in Wisconsin. On December 8, 2006, Herrig and Kieler went to the Grant County Courthouse in Lancaster, Wisconsin. Herrig testified that he was in the area to look at a concrete plant with Kieler and simply stopped by the Courthouse because it was nearby. They met with Lisa Riniker, the District Attorney of Grant County. Herrig reported to Ms. Riniker that Debtor had failed to pay him for the jobs they had completed together. He also told her of Debtor's pending bankruptcy.

Ms. Riniker informed Herrig that he would need to go to the Cuba City Police Department in order to report the crime. Herrig proceeded to the police department where he met with Chief Kevin Atkinson. He told Chief Atkinson what had occurred and provided him with copies of documents showing that Debtor was paid by the homeowners for Weber Concrete's work, but Debtor had not in turn paid Weber Concrete.

On the same day, Chief Atkinson contacted Debtor. He told Debtor what he had learned from Herrig and explained that a charge of theft by contractor may be filed against him. A week later, the Grant County Circuit Court issued a summons for Debtor to appear on the charges of Misdemeanor Theft and Theft in a Business Setting.

On March 8, 2007, the Grant County District Attorney offered Debtor a plea bargain in the criminal case.  In exchange for dismissal of all charges, Debtor was required to pay restitution to Weber Concrete and other creditors.  Wishing to avoid prosecution as well as a criminal record, Debtor accepted the offer.  He borrowed money from friends and family in order to pay $16,487.94 in restitution.  All criminal charges were thereafter dismissed.

Weber Concrete received a check in the amount of $7,344.62 on July 3, 2007.  Under the restitution agreement, Debtor also paid $8,943.32 to Spahn & Rose Lumber Company and $200.00 to Marvin and Patricia Puls.  The amounts paid to Spahn & Rose and the Puls are not in dispute here.

Herrig testified that he did not go to see the Grant County District Attorney or Chief Atkinson for the purpose of collecting Weber Concrete's debts.  He asserts he contacted the police out of a moral duty to report crime.  Herrig testified that, since he was near the Courthouse, it was convenient for him to visit the prosecutor.  On cross examination, Herrig testified that, as the office manager for Weber Concrete, he had a desire to collect the funds Debtor owed to his company.  He stated that this was not why he went to the police, however, and that he could have recovered the money by obtaining liens against the homeowner's real estate.

Debtor alleges that Herrig contacted the Cuba City Police with the intent to collect a debt, in violation of § 362(a) and § 524(a).  Weber Concrete argues that Herrig was not acting on its behalf when he reported Debtor to the police.  It claims that contacting the police was not a violation of the automatic stay because § 362(b)(1) specifically excepts the "commencement or continuation of a criminal action" from the automatic stay. Further, it alleges that even if the Court finds the § 362(b)(1) exception does not apply where the primary motivation is the collection of a debt, Herrig contacted the police to promote enforcement of the law rather than to collect a debt.

**HERRIG AS WEBER CONCRETE'S AGENT**

Weber Concrete claims that Herrig was acting in his individual capacity, rather than as its agent, when he reported Debtor to the police.  "A fundamental principle of agency law is that whatever an agent does, within the scope of his or her actual authority, binds the principal."  Magnusson Agency v. Public Entity Nat'l Co., 560 N.W.2d 20, 25 (Iowa 1997).  Actual authority to act is created when a principal intentionally

3

confers authority on the agent.  <u>Hendricks v. Great Plains Supply Co.</u>, 609 N.W.2d 486, 493 (Iowa 2000).  In contrast, "[a]pparent authority is authority which, although not actually granted, has been knowingly permitted by the principal or which the principal holds the agent out as possessing."  <u>Magnusson Agency</u>, 560 N.W.2d at 25.

Herrig was in charge of all accounts for Weber Concrete.  He was allowed to write checks and file liens.  The owner of Weber Concrete only had contact with Herrig on a quarterly basis.  Steve Weber was in charge of the field operations of the company, but Herrig was in charge of bill collection and office management.  Herrig had actual or apparent authority to act for Weber.  He was, without doubt, acting as an agent for Weber Concrete when he contacted the police about Debtor's failure to pay for Weber Concrete's work.

### CRIMINAL PROCEEDINGS EXCEPTION TO THE AUTOMATIC STAY

The filing of a bankruptcy petition operates as a stay of, among other things, an act by a creditor "to recover a claim against the debtor that arose before the commencement of the case."  11 U.S.C. § 362(a).  Some acts to recover a claim are excepted from the automatic stay, including, "the commencement or continuation of a criminal action or proceeding against the debtor."  11 U.S.C. § 362(b)(1).  Defendants have the burden of proof regarding the applicability of any § 362(b) exceptions to the automatic stay.  <u>In re Westman</u>, 300 B.R. 338, 342 (Bankr. D. Minn. 2003); <u>In re Reisen</u>, 2004 WL 764628, *3 (Bankr. N.D. Iowa 2004)(Kilburg, J.).

Courts have split in their application of § 362(b)(1).  Many courts apply it strictly to all criminal actions or proceedings, citing its plain meaning.  See, e.g. <u>In re Bibbs</u>, 282 B.R. 876, 880 (Bankr. E.D. Ark. 2002) (Mixon, J.); <u>In re Shake</u>, 154 B.R. 270, 276 (Bankr. D. Neb. 1993); <u>In re Simonini</u>, 69 Fed. Appx. 169 (4th Cir. 2003); <u>In re Gruntz</u>, 202 F.3d 1074 (9th Cir. 2000).  On its face, § 362(b)(1) does not provide an exception based on intent.  <u>Gruntz</u>, 202 F.3d at 1085.  These courts take the view that: "If the statutory command of the Bankruptcy Code is clear, we need look no further: it must be enforced according to its terms."  <u>Id.</u> (citing <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235 (1989)).

Other courts, including this Court in dicta, have stated that the § 362(b)(1) exception to the automatic stay is not absolute and does not apply when the criminal prosecution of a debtor is primarily motivated by an intent to collect a

4

dischargeable debt.  See, e.g. Reisen, 2004 WL 764628 at *4 (holding creditor did not violate the automatic stay because its violation was technical and inadvertent); In re Dorsey, 373 B.R. 528, 531-32 (Bankr. N.D. Ohio 2007) (finding the debtor had failed to prove that the creditor's primary motivation was debt collection); In re Brinkman, 123 B.R. 318, 322-23 (Bankr. D. Minn. 1991)(finding debtor had failed to meet his burden of proof).

These courts have concluded that it is inappropriate to allow creditors to utilize the criminal system to collect an otherwise dischargeable debt.  See Dorsey, 373 B.R. at 531.  They glean this rationale from the purpose of the automatic stay rather than the language of § 362(b)(1).  Id.  The automatic stay is one of the "fundamental debtor protections" offered by bankruptcy law.  In re Hartung, 258 B.R. 210, 213 (Bankr. D. Mont. 2000) (citing H.R. Rep. No. 95-595, at 340-42 (1977); S. Rep. No. 95-989, at 54-55 (1978)).  One of the several purposes it serves is giving the debtor a "breathing spell" from the pressures of creditors that drove the debtor into bankruptcy. Hartung, 258 B.R. at 213.  The automatic stay ensures an orderly distribution of the debtor's assets, preventing one creditor from moving ahead of others in order to receive a higher distribution. See Shake, 154 B.R. at 273.

This Court has considered the arguments on each side of this issue.  Respect for federalism and the view that federal courts should not interfere with state criminal proceedings has appeal. However, equally as compelling is the view that the automatic stay should protect debtors from creditors seeking preferred status through the use of the criminal process.  Properly applied, enforcement of the automatic stay under these circumstances can be accomplished without impairing the State from fulfilling its statutory duties.  For reasons set out hereafter, it is the conclusion of this Court that ultimate resolution of this issue is not required in this case.

This Court has recognized a distinction between conduct based upon color of state authority and private conduct.  See Reisen 2004 WL 764628 at *4.  Whether or not an exception exists based on intent, the prohibitions discussed in § 362(b)(1) are directed toward prevention of interference with prosecutions under State law and do not implicate private conduct.  Creditors are not entitled to the same protection under § 362(b)(1) as is provided to the State.  In re Byrd, 256 B.R. 246, 251 (Bankr. E.D.N.C. 2000) (Small, J.) (holding the stay was not violated where crime was reported prior to debtor's bankruptcy filing). In Byrd, the court held that a creditor may not report a crime

5

postpetition with the primary purpose of recovering a debt which is dischargeable in bankruptcy. Id. The state's significant "interest in administering [its] criminal justice system free from federal interference" is not implicated when a creditor seeks to recover a prepetition debt by making a criminal complaint. Id. (citing Younger v. Harris, 401 U.S. at 44-45).

In summary, § 362(b)(1) does not control in this case and the Court need not decide the extent of its application. Instead, the Court concludes that the acts of non-governmental individuals are not excepted from the stay under § 362(b)(1). Every creditor has the right to protects its interests and seek to except debt from discharge under § 523(a) or object to discharge under § 727(a). Utilizing the criminal process in the manner described in this case, however, prevents the bankruptcy court from making dischargeability determinations. It allows, unfairly in this Court's view, a creditor to improve its position at the expense of other creditors.

## VIOLATION OF THE AUTOMATIC STAY

The scope of the automatic stay is extremely broad. In re Knaus, 889 F.2d 773, 774 (8th Cir. 1989); In re Vierkant, 240 B.R. 317, 320 (B.A.P. 8th Cir. 1999). It stops "all collection efforts, all harassment, and all foreclosure actions . . . and permits the debtor to be relieved of the financial pressures that [resulted in the bankruptcy]." Vierkant, 240 B.R. at 320; In re Tuecke, 2006 WL 3000028, *1 (Bankr. N.D. Iowa 2006) (Kilburg, J.). "Because of its fundamental importance, courts must display a certain rigor in reacting to violations of the automatic stay." Tuecke, 2006 WL 3000028 at *1.

A creditor's action in encouraging a criminal prosecution with the intent of securing payment in preference over other creditors fits within the definition of an act precluded by the automatic stay. In re Soto, 302 B.R. 757, 759 (Bankr. D.N.H. 2003); see also In re Carlin, 274 B.R. 821, 825 (Bankr W.D. Ark. 2002). When a creditor reports a crime, courts distinguish between an innocent intent for the report and an intent to collect a debt. Shake, 154 B.R. at 274. Credibility is often a critical determination under these circumstances. See Reisen, 2004 WL 764628 at *4.

In weighing the credibility of witnesses, the court must examine the evidence presented and evaluate the testimony, including variations in demeanor as well as changes in tone of voice. Anderson v. City of Bessemer, 470 U.S. 564, 575 (1985). The court can assess credibility based upon the content of the

6

testimony as well as the court's own experience with the way people act. In re Carrigan, 109 B.R. 167, 170 (Bankr. W.D.N.C. 1989). Where two permissible views of the evidence exist, it is the responsibility of the court to weigh the evidence presented, including the credibility of the witnesses, and make a choice between conflicting testimony. In re Waugh, 95 F.3d 706, 712 (8th Cir. 1996); In re Dullea Land Co., 269 B.R. 33, 36 (B.A.P. 8th Cir. 2001) (discussing bankruptcy court's evaluation of evidence and credibility of witnesses).

Herrig testified that he contacted the prosecutor and the police out of a moral duty to report a crime, not with a desire to collect a debt. Although it is possible that Weber Concrete could have recovered the debt by obtaining liens against the homeowner's real estate, it never attempted to do so. Between December 8, 2006, when Herrig visited the police department, and July 3, 2007, when Weber Concrete received the restitution check from Debtor's attorney, Herrig never contacted an attorney or took any other action to obtain a lien against either property. Debtor argues in a convincing manner that Herrig did not do so because he anticipated that Weber Concrete would be paid by Debtor through the criminal process. On the stand, Herrig was evasive and uncomfortable when questioned about his intent. He reluctantly admitted that he wanted to do his job and see that his employer was paid.

The Court finds Mr. Herrig's testimony inconsistent with any rational interpretation of his actions. It was self-serving and not entitled to be given substantial weight.

This Court concludes that Herrig intended to collect the debt owing to Weber Concrete when he contacted the prosecutor and the police. Debtor has established that Herrig violated the automatic stay based on Herrig's conduct and intent. As Herrig was acting as an agent for Weber Concrete, his violation is imputed to the corporation.

## SANCTIONS

"An individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). The violation is "willful" where the violator's conduct was deliberate and with knowledge of the bankruptcy filing. In re Cullen, 329 B.R. 52, 57 (Bankr. N.D. Iowa 2005); Knaus, 889 F.2d at 775. In imposing actual damages, "the court has discretion to fashion the punishment to fit the circumstances." Cullen, 329 B.R. at 57.

An award of punitive damages requires not only a willful violation but "appropriate circumstances" such as egregious, intentional misconduct by the creditor.  Id.; Knaus, 889 F.2d at 776.

Weber Concrete has willfully violated the automatic stay. Herrig acknowledged he received notice that Debtor had filed a Chapter 7 petition.  With knowledge of Debtor's filing, he deliberately contacted the police to report Debtor's crime, intending to collect a dischargeable debt.  Therefore, sanctions are appropriate under § 362(k).

Section 362(k) allows sanctions of actual damages plus attorney fees.  Although Debtor was required to pay restitution in the amount of $16,487.94, only $7,344.62 was paid to Weber Concrete.  Therefore, the appropriate sanction for actual damages is $7,344.62.  Punitive damages are inappropriate in this case. Although Weber Concrete violated the automatic stay when Herrig contacted the police, the Court does not find this behavior egregious.  The information that Herrig provided to the police was truthful and at no time did he harass or even contact Debtor after receiving notice of his bankruptcy case.

Debtor requests an award of attorney's fees for the defense of the criminal prosecution, as well as those incurred from bringing this adversary proceeding.  Although § 362(k) provides for an award of attorney fees, this section does not contemplate attorney fees arising from defense of a criminal prosecution. Debtor is not eligible for fees charged by his criminal defense attorney.  He may, however, submit an application for attorney fees incurred in bringing this adversary proceeding.

## CONCLUSION

Debtor has established by a preponderance of the evidence that Herrig acted with the intent to collect a dischargeable debt.  This act violated the automatic stay.  The acts of Herrig are binding on Weber Concrete.  Sanctions are appropriate since Herrig was aware of Debtor's filing when he contacted the police. Accordingly, Weber Concrete is liable to Debtor for damages in the amount of $7,344.62 plus attorney fees.  As Herrig contacted the police before the entry of Debtor's discharge, the discharge injunction under § 524 is not implicated.

**WHEREFORE,** Debtor's Motion for Sanctions against Weber Concrete is GRANTED IN PART AND DENIED IN PART.

  **FURTHER**, the Court finds that Debtor Douglas J. Pearce has established, by a preponderance of evidence, that Defendant E.L.W. Corporation, d/b/a Weber Concrete, violated the § 362(a) automatic stay.

  **FURTHER**, Debtor Douglas J. Pearce has failed to establish a violation of the discharge injunction under § 524 for the reasons set out in this opinion.

  **FURTHER**, the Court awards damages in favor of Douglas J. Pearce in the amount of $7,344.62.

  **FURTHER**, Debtor shall submit an application for attorney fees on or before February 17, 2009.

  **FURTHER**, judgment shall enter accordingly.

  DATED AND ENTERED:  January 27, 2009

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE

39/1